We'll hear argument next in U v. United States, 21-2755. We'll hear argument next in U v. United States, 21-2755. We'll hear argument next in U v. United States, 21-2755. I don't think it's distracting anyone. Okay, great. Okay? Okay. Please proceed. Good. Good morning. May it please the court. My name is Paul Sheckman. I represent the appellant, Keith Yu, in this matter. And I'm hoping not to get a rough time. There are two. You might be hoping against hope here. I'm still hoping. There are two questions before this court, both relating to the statute of limitations. The first is, is lapse of time a mandatory or a discretionary bar under Article VI of the United States-Korea Extradition Treaty? The second is, if that issue is mandatory, which means it's for the court, if it is mandatory, has the statute run or is it told in some way? The courts below did not consider the second question. And if I can persuade you on the first that this is mandatory, you may choose to remand on the second question. So I'll focus most of my argument on the first question. And that is, is this a mandatory or a discretionary bar? And the government's argument, like the argument in the Ninth Circuit, is that this is an easy question because the word may appears at the very beginning of Article VI when it says extradition may be denied on limitation grounds. And we cite in our brief, I'm not big on string sites, but we cite some 20 cases, including Supreme Court cases and cases in this court, that say the word may is not dispositive. But most of those cases are cases where it says may only, which is very different. There are a few that say may means shall, but where it's may only, it's a different issue. So the question is, what does it mean when it just says may? Understood. Some of those cases are just may cases, and some of them say may standing alone doesn't mean shall. And I think here what may means is this is a permissible ground to deny extradition. Well, isn't that permissible is exactly what may means. It's a word of permission. It's not a word of command. No, but I think, Judge, if you look, and you'll see this in the legislative history that I'll turn to in a second, there are statutes that are silent on whether lapse of time, whether they're running at a statute, allows for a bar's extradition. In other words, whether a statute of limitations is even an issue at all. And I think what Congress was saying here is it is an issue. Well, but, you know, to me, the issue is not so much it says may and the game is over. I look at this treaty, and Article 2 defines extraditable offenses. It uses the word shall six times in defining that and talks about may not in one cases. And then in one case, it suddenly shifts to may be denied. Then the next article about nationality talks about shall exclusively uses it three times. The next one uses shall until, again, the very last clause when it shifts to may. Article 5 uses shall. It seems to me that it's very hard to read. I'm stopping there. I'm stopping at Article 6. It goes on. Consistently, it seems to me, using shall in most cases and may exactly where you would expect discretion to be conferred. So why is this one? And, indeed, even I think you acknowledge that the capital punishment provision in Article 7 that may is permissive rather than mandatory. So what's different about Article 6 from Article 7 and all the cases that makes may mean shall there when shall is used when it means shall? But, Judge, this Court, the Supreme Court, has said that the fact that shall is used elsewhere isn't dispositive. Well, it may not be dispositive. That is, that it is conceivable to do something else, but it certainly is highly suggestive, isn't it? But, Judge, let me refer you to Article 4.4, which says the executive authority of the requested state may refuse extradition. This is about military offenses. And so you see it saying the executive authority may, which, on your view, on the government's view, executive authority is unnecessary there because the word may controls. That's an interesting point, except that I don't know whether the Koreans know that. In other words, here we're dealing with, as we are in treaties, with two different countries, with different legal systems, different languages. Here maybe somebody wanted to say the executive authority to make that clear. Maybe the Koreans don't care who exercises the discretion under Article 5. But we do in our domestic law provide that the things that are permissive or discretionary are for the executive. That's not necessarily a matter of treaty. That's a matter of our style of separation of powers. Understood. Article 2, the executive authority of the requested state may in its discretion. Again, one knows how to sound discretion when you choose to. So I don't think the fact that this is may signals lack of discretion. I think it simply signals that there are many treaties in which lapse of time is irrelevant. And in this treaty, it is a permissible ground for denying extradition. And then the question is, who decides? But the word may doesn't tell you that. You see, you keep using the word it's a permissible ground. And that already seems to me to give up the point. It's not a mandatory. You're not saying it's a mandatory ground. You're not saying there's no choice here. It means, in effect, extradition must be denied. No, what I'm saying is what that language means is this is an appropriate ground to deny extradition. But it doesn't decide the question who decides. Well, I thought that in your brief, I thought that in your briefing, you conceded that if it was discretionary, it belonged to the secretary of state. It has to be, Judge. If that, if instead you are making an argument that this says may, but that this may confers authority on the court to make that decision, that's a different argument. But I haven't seen that argued in the bulk of your papers. Nor am I making it, Judge. And I don't think I could make it. If there's discretion and a statute is run, you say to yourself, how does the court decide? Right? Statutes run, statutes run. So if there's discretion, it's got to be an executive decision. Then I don't understand what you mean when you say may maybe allows you to do something. It allows this country to deny, and Korea, to deny extradition. But it doesn't decide who the decision maker is. Let me turn to the history and show you just what I mean. All right. Here's what one learns in the history. The summary provision of this begins by telling us, as to Article VI, it precludes extradition if the statute has run. And there's that, and then there's the technical analysis that cuts the other way. So that, you know, you're right. There is something in the legislative history that cuts your way, and there's something that cuts the other way. Well, more than something, Judge. So if you look at the technical analysis, it begins with the word may. But that doesn't solve the problem because that just gets us back to the question, what does may mean here? And, indeed, if you look at it, it then footnotes to saying it's settled law that if there's no mention of lapse of time, there is no lapse of time bar. So I don't think that gets you very much. It's hard to imagine. Could I just go back to the text and also to what makes sense? It would seem to me that applying the statute, the domestic statute of limitations, what would be the domestic statute of limitations, it makes enormous sense to make that a discretionary determination for the following reason. Nobody denies statutes of limitations are important and protect significant rights. But whether it's five years or six years is relatively arbitrary. One country might say a five-year statute of limitations, one might say ten, one might say three. It seems to me there would be a vast difference between a situation in which the Korean statute of limitations was six years for financial fraud and they made this request and this indictment at five years and three months, where in the United States, five years would end it. There's a vast difference between that and a situation where the requesting country has no statute of limitations at all or recently changed their statute of limitations after this case came to light to make it a 50-year statute of limitations, where previously it was five. These are judgment calls, it seems to me. I would think it would be very strange for the treaty to say the United States can deny expedition, must deny expedition, has no discretion to deny expedition wherever the domestic statute of limitations would have run. But it's not at all peculiar to say where the domestic statute of limitations would have run. Somebody should take a look at this. But Judge, here's what's odd here. It is a given from the legislative history that if the statute of limitations has run and the extradition is going in the other direction, right, Korea will never extradite. That's right, because they take this in a different way than the way I just said, which strikes me as sensible in the context of American law. If they want to do that, that's fine. And I don't see why there needs to be symmetry here. We have negotiated treaties with countries, and Judge Sutton's opinion in the Sixth Circuit is very good about this. It goes through all these different possibilities. We've done every manner of thing. In order to get an extradition treaty with one country, we may have to concede to the fact that this clause may be denied, and they're going to do that all the time because that's what they do. But it's better for us to have that provision, and indeed for us to then have some discretion, too, in the matter, than to have no extradition treaty at all. Some other country doesn't care about that, and we might have a different clause or no reference to statute of limitations at all. But what one is saying here is they'll never do it. Yeah, so what? That's them. And we have discretion. So it's a one-way street where only one direction does the statute of limitations say it's a bar. No, no, it's a two-way street in that both countries have discretion. Right now, it seems that Korean judges, Korean executive branch, whoever makes these decisions in Korea will always exercise that discretion one way. But if a different government comes into play, if their laws change, if no one renegotiates the treaty, they will have discretion, too. We have discretion in the other direction. So we each do what we do. We exercise our discretion in the way we choose to exercise it. But I guess I can't get around the fact that you keep slipping back and forth between the idea that you concede that if it is discretionary, it belongs to the secretary of state. I do indeed. And yet you don't. I do. Oh, you do. Okay. Between that and saying that this actually is permission, it is not absolutely mandatory and so on. It's just that for some reason the court has to decide this one. But, Judge, you're in a position you have to say precludes in the summary. It's just a mistake. What their word is, it's erroneous. Right? It's a summary of this provision which says it precludes. Yeah, you know, putting aside Justice Scalia's somewhat crabbed view of when it makes sense to consult legislative history, everybody knows that legislative history is slippery, and you look at different types of things. A little bit of dialogue between an executive branch official and one senator where the senator says something that may or may not be right and the executive branch person does not comment or correct is pretty far down the list of authoritative legislative history. The summary is much better. But as Judge Calabresi pointed out, the summary is offset by the fact that the more detailed analysis does not use the word preclude. Let me say two things. One, Justice Scalia, who is a consummate textualist, has told us when it comes to interpreting treaties, it's different. It's different than interpreting statutes. Well, I venture to say you haven't got any Scalia's on this panel, and most of us would be pretty receptive to some kind of legislative history where there is any kind of question about what this word means. But when you've got very powerful textual evidence and the legislative history, I submit, is not exactly the most profound. Again, with treaties, you're usually looking to drafting history and things between the two countries, not to a remark in a Senate report. But I think you're typically looking at Senate reports when you interpret. Well, you're only looking at Senate reports because that's the only ones there are with treaties. Indeed. And so look at this one. It begins with the word preclude in the summary. And the answer is, well, that's just a rogue drafter's mistake. It then says in the second sentence of the history here, similar provisions are found in recent U.S. extradition treaties, Japan, France, Luxembourg. We know that Japan uses shall, France uses shall. So one has to say, when saying similar provisions, they really didn't mean similar. You then have an entire provision here that doesn't say a word about where this authority is vested. So I don't think the technical analysis gives you very much. And then I know you want to dismiss him, but you have Senator Graham, who presided here. And if you look at his questions, they really are a sophisticated understanding of these provisions. Particularly one thing he says is it's the statute of limitation of the requested state. That is unusual. That is unusual. That is unusual. And he says, and it bars. And it's not like you get a response to that that says, well, wait a second, it doesn't bar, that's important. So I don't think if you look at this legislative history as a whole, and you and I differ. Look, the legislative history, part of it goes your way. There's no doubt about it. I'll take that. Part of it goes the other way. So I think the best we can say is that the legislative history is ambiguous. And even if we rejected Judge Frank's famous statement that I only look at the text of the statute when the legislative history is ambiguous, here we would look at the text of the statute, which is not ambiguous. Well, Judge, you and I differ because what you know is these were drafters who knew how to say executive authority when they wanted it. They say it in Article 2. One question is just a mechanical question, in effect, because I'm still not sure I fully understand your position. Suppose we ultimately agree with you. Does agreeing with you mean that we remand to the district court and say, grant the writ of habeas corpus because he may not be extradited? Or do we remand and say, no, district court – well, listen, it becomes an interesting question then. So we remand and tell the district court, grant the writ of habeas corpus so that the magistrate judge can reconsider whether, in his or her discretion, the warrant of extradition should be granted. No, because it's not for either the district judge or this court or the magistrate judge to make a discretionary decision. So the remand would say, done, he may not be extradited. No. Tell me what we say. The remand would say, this is a decision for the court, right? This is a mandatory bar. And then the district court would have to grant habeas corpus. No, the district court would have to decide, is there a tolling provision such that this statute of the requested state has not run? Oh, okay. So they have to deal with the merits of the statute of limitations. Still open. And I can argue that. But the way you started was, if we were to agree with you on this first point, then we would remand and let Judge Seibel – Yeah, I don't know that you have to, but I think that's a sensible approach because – Would run. Would have run. Then you must grant the writ of habeas corpus and preclude extradition. That's totally right. And that is what the summary says has to happen? Okay, that's what I wanted to understand. I just wanted to understand what you're asking us to tell the courts below to decide. I'm asking the courts below to say this is a question for you and decide it. So we've kept you well past your time. And I apologize to the court. Oh, no, no, no. That is entirely our fault. So we'll hear from Mr. Wickstrom. Oh, yeah, please put on your mask. I will. Good morning, Your Honors. May it please the court, my name is Derek Wickstrom. I'm an assistant United States attorney. I represented the United States – I represent the United States in this appeal and also represented the government before Judge Seibel and Judge McCarthy. The parties here agree that discretionary decisions about extradition are reserved to the Secretary of State. So the narrow question before this court is whether Article VI, the lapse of time provision, in our extradition treaty with Korea means that extradition is required to be denied if the statute of limitations has expired, as Mr. Yu argues, or if instead that provision permits the denial of extradition on that ground. Counsel? Yes, Your Honor. My only question, funny one, is the Secretary of State always has discretion to deny extradition. So what does it add here to say he has discretion to deny extradition? I mean, you know, he has that discretion, so why should we put it in this that he has discretion? And that might suggest that it means something more. Judge Calabresi, I take that point. The Secretary under Section 3186 always has discretion to deny extradition on virtually any basis. And so it's certainly true that this provision in our position Isn't this putting a handkerchief on top of the blanket? I take that point, Your Honor. It is true that any provision in this treaty that puts in the hands of the Secretary of State a particular discretionary basis to deny extradition arguably is surplusage as a matter of U.S. law because U.S. law would allow the Secretary to deny extradition for any reason, or I think for no reason. However, this treaty doesn't only bind the United States. It also applies in Korea. I don't know the state of Korea's domestic law on the question of whether there's absolute discretion to deny extradition. Even if there were, as a matter of international law, a recognized principle like that in U.S. law that extradition is ultimately a political judgment, nevertheless, it would seem to me it would make a great deal of sense for two countries to acknowledge. It's one thing if the Secretary of State says, I just don't feel like it. Or, I'm in fact going to withhold extradition in this case until you agree to some other demand that we have of you in the international arena. It would seem to me it would be different if Korea was in a position to say that's outrageous, to hold us hostage, to keep this terrible criminal free in the United States for some political objective. Having this in the treaty means Korea couldn't say that because Korea has on this ground agreed that the requested country has this discretion. That's agreed between the two countries. So it seems to me that's a very significant difference between the discretion that always exists, that I assume we're not going to extradite Jack the Ripper to Russia at the moment for diplomatic reasons. We're not doing them any favors right now. But that's different than putting in the treaty that Russia agrees that you have the discretion to do that in these particular circumstances. That's exactly right, Judge Lynch. And the treaties between— In other words, your answer to my question is that there's discretion and discretion. And even if the same person has or the same institution has discretion, there are different ways of granting it and suggesting when it may be done. But that's what's going on here. That's your answer to my rather snotty question. Your Honor, there is discretion and then there's discretion. And it makes sense for the parties to treaties to organize themselves about the way that they're going to exercise discretion. And so, although it's true that our Secretary of State can always deny extradition, it is also true that we have negotiated with Korea certain bases on which we all agree discretion may be exercised. One is this statute of limitations issue. But as Judge Lynch pointed out with Mr. Schechtman, that's far from the only area where this treaty grants discretion. There's discretion to refuse extradition for offenses under military law that are not offenses under criminal law. There's discretion to extradite for crimes that are punishable by death in the requesting state. There's discretion about whether to agree to seize evidence for Korea in this country or vice versa. And so, there are a number of areas that are committed to the discretion of the Secretary of State by the treaty, even though as a matter of U.S. law, he has absolute discretion. I want to address briefly the legislative history or the secondary tools of interpretation point. It is true that this Court has said that secondary tools of interpretation, such as legislative history, although it's not the only one, can be resorted to where the treaty is ambiguous. The treaty here is not ambiguous. It's not simply that the word may is used, and that's dispositive. It's not simply that the word shall is also used in Article VI, and that's dispositive. It's that if the Court reads the entire treaty, the entire relevant provision in the entire treaty, it's quite clear that may is used to confer discretion, whereas shall is used to take it away. And that usage is consistent throughout the treaty. And that is why the word may in Article VI confers discretion. Now, as this Court held in George's and in the Brink's case that where a treaty like this one is unambiguous, there's no need to resort to secondary interpretive tools. But here, the secondary interpretive tools overwhelmingly point in the government's direction as well. First, the Court recognized in Sceftoros that in choosing between conflicting interpretations of an extradition treaty, the presumption ought to be in favor of a liberal interpretation, that is, an interpretation that results in more extradition. That presumption weighs in favor of the government's discretionary reading here. Second, this Court and the Supreme Court have both recognized that the executive branch's interpretation of the treaty is entitled to great weight. And the executive branch's interpretation of this treaty is that it confers discretion in Article VI. Now, third, there's this legislative— Excuse me. On that last point about the executive branch interpretation, is there evidence for that other than that's the position that the government is taking here in this case? Yes, Your Honor, there is. And that evidence, the government's taking the position it's taking in this case because of the executive branch's view that this is discretionary. It's the position that we took in the Patterson case, in the Morella case, in the Porum case. Those are all cited in our briefs. So it's been a consistent position of the government? With the exception of one case, Cho in the Ninth Circuit, in which the government didn't raise it until oral argument in the Ninth Circuit, it has been a consistent position. But I want to address— Well, they did raise it at oral argument. Whether or not that it's too late to raise it, that smacks of somebody in your position blew it and then figured it out later that the executive branch position was actually something different. Well, certainly the executive branch ultimately did take that position, but the Court found that we had first waived it. Waived it, yeah. I want to address the particular evidence of the legislative history that was before the Senate because even that, I submit, points in our direction. The parties have identified four pieces of relevant legislative history, and they are, first, the submittal letter that the State Department included with the treaty when it sent it to the Senate for ratification. Second, the introductory summary of the Senate Foreign Relations Committee's report, which Mr. Schechtman discussed previously. Third, the technical analysis contained in the same report, and there's an important point about that technical analysis, and it's this. Whereas the summary was, Mr. Schechtman's reply brief said the summary part was prepared by Senate Foreign Relations Committee staff. I have no reason to doubt that. The technical analysis was not prepared by Senate staff. The technical analysis was prepared by the folks at the Department of Justice and the Department of State who negotiated the treaty. And then fourth, there's the comment by Senator Graham. Now, the two pieces of legislative history that suggest this is discretionary, the technical analysis and the submittal letter, are far stronger. The submittal letter is extremely strongly in favor of the government's position, right? Yes, Your Honor, that's correct. So what have we said about submittal letters and the degree of deference we owe in connection with reading legislative and interpreting legislative history that we owe to those submittal letters? I'm sorry, Your Honor. Is the question what degree of deference is owed to the submittal letter? Yes. What have we said about that? The submittal letter is entitled to deference for the same reason courts defer to the executive branch's position in general. It's entitled to a great deal of weight. And the reason for that is because the folks who negotiated this treaty, the executive branch DOJ and state officials that negotiated this treaty, were clear from the inception until now that Article VI was discretionary. The sources in the legislative history that were written by the same people who wrote the language in this treaty and who negotiated the treaty, they say that this is a permissive and not a mandatory provision. But what you're saying is that the submittal letter is particularly important because this is what the executive tells the Senate that this treaty means. And when you vote this treaty with this language, this is what it means. So that's the argument for deferral. Yes, Your Honor. That is the argument. And the same argument applies to the technical analysis. But the officials who negotiated this treaty are in a far better position to know what it means than are the Senate staffers or one senator who misinterpreted the treaty in a question. And so the legislative history points our way as well. Although it's numerically split, the evidence on the government side of the ledger is far weightier. And so even if the Court decides that Article VI is ambiguous and that resort is necessary to secondary interpretive tools, the Court should still hold that Article VI is permissive. Unless the Court has any further questions, I'll rely on the remaining arguments in my submission. Mr. Chairman? I'll be brief because you were kind enough to let me run over before. And I would just say a couple of things. There's been mention of the Cho case. And we know the following. In the magistrate court, the government, and this is the first time this issue came up. It's 2007. And we know that in the magistrate's court, the government's position was this is mandatory. In the district court, the government's position was this is mandatory. And throughout the briefing in the Court of Appeals, the government's position was this is mandatory. The response is someone not as good as Mr. Wickstrom got it wrong. And that's unlikely because all of these extradition matters are done with the assistance of the Office of International Affair. It's not a frolic of a single assistant. That's the first point. The second point is, Judge Laurier, I'm not sure the submittal letter is as strong as you think it is. It used the words permits. I think permits goes back to my point. I haven't been able to sell it yet, but I'm going to try now. And that is that all the permits means here is this is a proper ground. Unlike other treaties that are silent on this, lapse of time is a reason to bar extradition. It doesn't speak to the question of who's the decision maker. So the salience of May, your point is, I take it, it's got a different salience to you. That's what you're saying. What it doesn't mean is this is discretionary such that what is normally one thinks of as an issue for the court, statute of limitations, is somehow an issue for the executive branch. And the last thing I'll say is this. If you look at Article VI in the technical analysis, one sees the following. One sees it begins with the word may. And I don't take much from that because the statute begins with the word may. I don't think it adds much. You're then told that similar positions exist in three other recently enacted extradition treaties, and we know that in two of them they speak of shall. And if similar means what it usually means, it means at least the people who wrote this technical analysis didn't think there was a difference here because of the use of the word may. And the last thing I'll say is the next sentence says Korea insisted on this provision because Korean law demands that extradition be denied if the statute has run. Judge, I understand that the world can change. They can change their domestic law. But when this was negotiated, that was domestic law in Korea. And so one knows that they will never extradite. And so the question becomes when the word may was used, was it used to confer discretion? We can do it if we want. They never will. Right. They never will. But that's their discretion. I just don't see why the fact that they insisted on having that discretion because they intend to use it, and the United States knows that, doesn't mean that the United States is taking the position that we always must do what you would do. But remember, what Korea is saying is we demanded this provision because we will never extradite. They demanded it because if we give them the discretion in the treaty, they will take advantage of that. They will never take advantage of it. No, they will take advantage of it. They will take advantage of their authority. They will always take advantage of their authority, their permission to deny extradition in this circumstance. Judge, respectfully, I don't know what that means. I'm telling you exactly what it means. It means that Korea wants this provision. They don't really care. In fact, it's to their advantage if the United States is not going to be required to apply its own domestic statute of limitations because they'll get more people back. They're the ones who are insisting on this provision, and they're insisting on it because they intend, you say consistently always, to exercise the power that this gives them. I just don't understand why that means that the United States is now obligated, obligated to Korea to always apply its own domestic statute of limitations so as to deny, potentially, extradition of somebody that Korea asked to get. I just do not understand why their intention, their demand to have this power, means that we are now denied the authority to send somebody back because may means must. I just don't follow the law. It seems total non sequitur to me. I'm sorry. I hear you. I'll stop. Unless there is some precedent relating to symmetry that we're not aware of or that I'm not aware of. All I'd say is this, Judge. There are no doubt there are times in the law, many times, where the law is asymmetrical. Defendants, prosecutors. I think this is an instance where anyone negotiating the statute, knowing that it wasn't going to work in this direction, would say that's okay. We want the ability to have it work in the other. It's not the ability, you see. That's the whole point. We do have the ability to have it work in the other direction if we choose in a particular case. That's my point. We would be insisting on a peculiar symmetry because we're saying if you're going to always do this, we're not just going to retaliate tit for tat. We're going to tie our own hands just to be like you. But you're tying your hands in the sense of you're saying this is a person who you want, not that we want, and we'll give them to you even though you'll never give a similar person to us. That's asymmetry that I don't think makes sense. I apologize for running on so long. No, no, no. No apologies needed. Thank you very much. Thank you for your decision. Well argued by both sides. Thank you.